United States v. Rodriguez-Rodriguez and Morales Rivera Yeah. Thank you. Why don't you go right to the door there? Thanks. We're going to wait for co-counsel. Here he is. Here he is. Okay. All right. All right. Mr. Roy, you may proceed. All right. Thank you. Good morning. May it please the Court. Opposing counsel. My name is Michael Roy. On behalf of Appellant Hector Rodriguez-Rodriguez, this Court should vacate the sentence and remand for resentencing. Our primary argument is that Mr. Rodriguez should not have received a criminal history point for his threats conviction, which in both of his appeals ended up bumping up his guideline range.               We completely admit the claim is forfeited. It's under plain error review, but I don't think that's a barrier to relief here. I do not see this case really as difficult or complicated. I admit it's technical. Hello? It's very complicated. It involves an esoteric Puerto Rican statute under which your client was convicted. I agree it's esoteric. And whether it fits within that or is similar to that laundry list of excluded misdemeanors for the enhancement. I agree it's esoteric. I agree it involves a five-part test to compare a Spanish language offense against disorderly conduct. But I would draw a distinction between complex or difficult to decide versus technical. And I think a good analogy would be this Court's decision in Hagen, which was another case about comparing something under the list of offenses, found plain error in that case. Before you launch into this argument, let's use the actual language of the doctrine, which is the error in the first instance must be plain, meaning clear or obvious, and not subject to reasonable debate. I agree. How do you check all those boxes? I don't see this as subject to reasonable debate. Even with that kind of multi-factor, sort of qualitative, substantive comparison, it's not subject to reasonable debate. It should have been clear or obvious to everybody in the district court. I think it being multi-factored involving a qualitative analysis doesn't mean that the answer is debatable. I think good analogies would be, like I said, Hagen, which was the exact same issue, exact same test. It was plain, clear, and obvious in that case. Or this Court's decision in the United States versus Ruth, which was a categorical approach about isomers of cocaine under the Illinois definition. That was plain error. Again, it was like one of the most complex types of tests that this Court applies, but it was still clear or obvious. Different because that involved comparing a federal and a state statutory definition. You can just line up the statutes. Here, this multi-factor, sort of nailing Jell-O to the wall kind of test. How can that satisfy plain error review? Why would we decide this kind of question on plain error review? Well, this Court has decided this kind of question on plain error review before in Hagen. I would disagree that it's quite that squishy. I don't think this is like a tort claim or something where it's super qualitative or Jell-O to the wall. I think it's closer to a categorical approach where it's more like a mathematical formula. You do have to go through a bunch of steps, but once you do, the answer is clear. The government's trying to create a debate by—I mean, they do a good job of making it sound complicated, but a lot of their argument relies on ignoring the 2009 Amendment to the Guideline, which created new tests. Their argument mostly comes from Hernandez, the Ninth Circuit's decision in Hernandez, which was a pre-amendment case applying a test that has since been abrogated. If you're looking at actual published cases comparing prior convictions to disorderly conduct, this Court's case in Bravo, the Ninth Circuit's case in Grob are the ones to look at. Bravo, those de novo review. Those were de novo, yes. But again, I would point to Hagen as an example that this type of claim can be brought up on plain error successfully. But I think it's difficult when we look at people versus Garcia, a Puerto Rican case that was looking at this disorderly conduct and said, when you're looking at the elements of disorderly conduct in Puerto Rico, there's A, B, and C. There's three different ways to commit this crime. And in order for you to determine whether or not it's A, B, or C, it's time, place, and manner. You also have to consider the subjective effect of the conversation or the communication on the receiver. You also have to determine the intent. And so there's all of these elements that the Supreme Court of Puerto Rico have said you need in order to even determine how the disorderly conduct statute in Puerto Rico was applied. And based on the record that we have in front of us to do this plain error analysis, and so the Supreme Court of Puerto Rico has said looking at the statute alone is insufficient. And so when we're comparing similarities, when we're comparing the elements, they told us we need even more than the statute. I would say that the record does contain enough to make the comparison here. To the extent that the facts of the underlying conduct were necessary to make the determination, I would point to this court's, excuse me, I'm looking for the case site. Sorry, this court's site in McNeil where it said that if the PSR doesn't include the information necessary to do the calculation, that goes towards plain error. That's not necessarily a barrier to finding plain error relief on appeal. But it was more drilling down on the clear obviousness that threat in Puerto Rican disorderly conduct, I'm going down the plain error test, right, that it was clear and obvious to the district judge without this being objective to, that this would have been a mistake comparing Puerto Rican threat and Puerto Rican disorderly conduct. It clearly should have been exempted. And so, it's getting beyond the first step. Even if we accept the argument that it was, how was it clear or obvious, knowing what's it required to make or to conduct that analysis under that five-factor test. And I would push back on one aspect of that, which is that it had to be the district court able to step in and know it. I know some of this court's case law sometimes refer to clear or obvious meaning that the Supreme Court has made clear that this is not a grading scale for district judges. It's whether it's clear or obvious in hindsight on appeal. It doesn't have to have been clear or obvious based off the presentation to the district judge. It's just whether looking retrospectively on appeal it's clear or obvious, that's what makes the error plain. Do we even have information in front of us to apply the test for this guideline, which requires sort of a hybrid approach? It's not just a comparison of legal elements. It involves looking at the actual conduct and making a sort of impressionistic determination about the level of culpability, the comparable level of culpability, et cetera. Do we even know what the conduct entailed? Yes, we do. I did attach to the reply in response to the government's argument some of the documents from the Puerto Rican conviction. This court can take judicial notice of those. But even without those documents, I would be happy to march through any of the five factors. I see I'm already in my rebuttal time. But there is a lot that this court can look at, and the big picture is it doesn't have to be just the same as disorderly conduct. It can also be considered less severe than disorderly conduct. And even without the court records, there's lots of hints just in the PSR that this was less severe than disorderly conduct. The minor penalty he got, a fine. Disorderly conduct was a very broad statute. It can be anything from carrying a firearm outside one's clothing when you don't have a possible permit to being loud on a street corner. It's very broad. I agree completely, and I think that cuts to our benefit because I think threats is also fairly broad. But disorderly conduct is even broader and can encompass things like throwing punches at strangers in public, which is not something you would be prosecuted under this Puerto Rico statute for. So you could be prosecuted for more severe conduct for disorderly conduct under any definition regardless if you use Puerto Rico's definition, the tribal country regulation, or one of the state laws from within the circuit. All of them allow people to be prosecuted for more severe conduct for disorderly conduct than what the threat statute considers. If there's no other questions at this time, I'll reserve the rest. Thank you. Mr. Wasserman. May it please the Court. Good morning, Judge Brennan. Good morning, Sykes. If I may be permitted in the short term that I have to go a little off script, I'll explain why I'd like to do that. In 2019, this Court decided U.S. v. Fincher, 929 F. 3rd 501. You rejected the argument that under Apprendi and Allain, the district court was precluded from making factual findings regarding a safety valve eligibility. That was followed up by a petition for a written cert, 19-6230, and the Supreme Court actually did something they don't do all that often in this kind of case. They asked the government to respond. They ultimately denied the petition on 3220. Now, jump ahead to something that came up after briefing. August 20th of this year, United States v. Cameron Johnson, setting to Erlinger and to Wooden. That was the case where, noted in Erlinger, the Supreme Court said, no, the different occasions question under ACCA has to go to a jury. This is what I think. I'm going to ask this Court to rethink Fincher in the context of the case that I'm here on because I think now under Wooden and under Erlinger and certainly under Johnson, the real inquiry isn't the statutory charging scheme or even the sentencing scheme. I think the Supreme Court has moved to making the most important inquiry is, are we looking into a range of facts other than the fact of a prior conviction? And if we're doing that, that's what triggers the Sixth Amendment. That's what triggers Apprendi and Allain. I know that wasn't briefed. Quite frankly, I didn't see it until I saw Cameron Johnson less than a month ago, but that led me to go back and look at Fincher and ask this Court to rethink that. If there are any questions, I'll reserve my time for rebuttal. Thank you. Thank you. Mr. I'm sorry. I can never get your name right. You're not the only one. It's Aaron Wegrin.  Okay. Thank you. Good morning and may it please the Court. Aaron Wegrin on behalf of the appellee of the United States. I'm doing a little bit of double duty here this morning, so I'd like to cover both appellant's arguments. First, I'll start with Mr. Rodriguez-Rodriguez. Specifically, the issue concerning his criminal history score and Section 4A1-2C. Can we accept the supplement? I believe you're referring to the supplementary Puerto Rican documents. To the reply. To the reply brief. I think this Court is within its power to take judicial notice of those documents. The government does not object to that. I would note, though, that that kind of speaks to the lack of a plain error in this case. The fact that my colleague needed to go back and kind of backfill in the record in such a fashion, I think speaks to how complicated and unplanned, frankly, this error is. Frankly, this error fits right into this Court's precedence in describing what plain error is by explaining what it is not. This case is arcane, subtle, difficult, debatable, factually complicated. Those things are what kind of distinguishes a plain error from what we have in this case, where we have a very kind of complex legal analysis with, you know, as the judges have noted, multifactorial analysis. And I would encourage the Court to look at page 3 of the supplemental materials. If the Court does decide to look at those and consider those, look at page 3 and get a sense for what actually this threat was. This was not, you know, a run-of-the-mill, you know, offhanded comment. This was a death threat where Mr. Rodriguez, Rodriguez threatened his then-girlfriend at the time to burn her house down with her and her children inside of it. So while my colleague attempts to dismiss this as kind of a nothing burger, if you look at the actual record, there's quite serious circumstances here. And frankly, I think you might also—my colleague acknowledges the forfeiture. You might even get to a waiver here. There's a reason, I believe, that this issue was not raised before Judge Stadmuller. It didn't exactly paint his client in the best light. Well, in the supplement, we don't have a whole lot of information about the conduct other than what he said, right? Correct. It is—A, it's written in Spanish and it is essentially a complaint and then the judgment. So it is not entirely clear, even on this supplemented appellate record, the precise factual circumstances surrounding, you know, what—for instance, we don't have evidence regarding whether Mr. Rodriguez had a weapon in his hand when he made this threat, what his girlfriend had said to him to prompt it. There's a whole host of circumstances that remain unknown. I want to address the McNeil point that my colleague raised. That's a different circumstance in that case where the—it had to do with complying with a plea agreement and ensuring that the district court was following the plea agreement and that was a burden that fell on the district court. Here, we're dealing with an exception to an otherwise applicable sentence where Mr. Rodriguez—Rodriguez is the one—if you look at this court's decision in Booker, it places the burden on the defendant to show that he is entitled to that exception. That's why, you know, my colleague tried to shift the burden from his client below in terms of fleshing out the evidentiary record to the district court of its own accord to kind of dive down this rabbit hole and flesh out the record. That's not—that wasn't the district court's obligation to do a sua sponte. That was Mr. Rodriguez—Rodriguez's obligation to present that argument in the district court as well as the evidentiary record to support it. I also want to address the Hernandez—Hernandez decision that we cited in our brief. Now, to make absolutely clear, the government is not encouraging this court to depart from its traditional common sense test that is always followed. It has always applied the kind of same approach that is now the sentencing commission adopted with application note 12A to section 4A1.2C. Government position is you look both at the categorical elements of the offenses, both the predicate offense of the defendant as well as the enumerated exception in the guidelines, but you also look at the precise factual circumstances. Now, Hernandez—Hernandez is a Ninth Circuit decision that predates the application notes adoption by the sentencing commission. The reason we cited it is because it is the most directly on point both factually and legally in terms of its analysis of the elements. It dealt with a predicate offense that was a threat, and it also dealt with the argument that that threat was analogous to disorderly conduct. So it's kind of directly on point on both those prongs. Now, yes, the Ninth Circuit didn't reach the full prongs of the 12A test and the analysis that this court is going to get to, but it did deal with the elements. And as Mr. Rodriguez—Rodriguez acknowledges, the elements of the offense are still part of the current appropriate analysis. So the Ninth Circuit's analysis of the elements in that case is still appropriate persuasive authority for this court's conducting its analysis. And the key point in that case is basically distinguishing amorphous, undirected criminal conduct that makes up disorderly conduct versus the type of threat we have in this case, where it's a specific target, specific victim, very detailed threat of what is going to happen. So while my colleague's argument takes a sticks and stones approach to this, like disorderly conduct can sometimes involve physical violence, so that means it's always more serious than a threat, I think that underplays the type of damage that can be done by threats and the seriousness of the threats in this specific 2012 offense. And finally, I want to address Hagen, this court's decision from a couple years ago. I think you can distinguish that case on a number of grounds, one of which it wasn't complete forfeiture in Hagen. The defendant in the trial court had raised this 4A, 1, 2C argument. It's just a different enumerated exception. So the argument was in the ether. The parties were debating whether it fell into an exception or not. This court, on appeal, just looked at a different exception in overturning. And so it wasn't a complete forfeiture like we have in this case. Secondarily, in Hagen, you had a much more adequate record on appeal where all the circumstances surrounding the predicate offense in Illinois were known. Here we have none of that. I just want to briefly touch on the secondary argument raised by Mr. Rodriguez-Rodriguez with respect to Judge Stattmuller's comments at the sentencing. I don't think this court can find any fault with Judge Stattmuller in those comments. I think they need to be read in context. Mr. Rodriguez-Rodriguez expressed remorse at the harms that he had caused his own family members. Judge Stattmuller, I think, was entirely appropriate for him to remind Mr. Rodriguez-Rodriguez that his crimes had harmed not only his family members, but also members of the broader public, as well as the description of the harms caused by gang violence in major metropolitan areas. This was one sentence in an otherwise complete sentencing transcript. This was not an extended duration. I just don't think you can portray this as a scapegoating, one defendant for all of modern society's ills. And that's reflected in the ultimate sentence of a below-guideline sentence. This wasn't scapegoating in any sense of the word. Unless there's any questions with respect to Mr. Rodriguez-Rodriguez's appeals, I'll turn my attention to Mr. Morales-Rivera's appeal. Firstly, I note that this is the first time we've heard anything about the Sixth Amendment or Johnson in this court. There was no supplemental briefing or anything. And I think this court, frankly, that issue has been waived by my colleague by not raising it before today. With respect to the argument that was actually briefed, I will acknowledge the government acknowledges that Judge Stattmuller made a slight misstatement of law at the sentencing hearing when he said the offense firearms enhancement was the same thing as the safety valves, no firearms condition. That's technically incorrect. Not to be fair to Judge Stattmuller, he was conducting this sentencing before this court's decision in Bingham last year that kind of drove home this distinction between the two. So he was operating in a pre-Bingham world, didn't have the benefit of that opinion. Yet the government still acknowledges it was slightly incorrect. That being said, that slight incorrect statement of the law was totally harmless in this case because of Judge Stattmuller's, one, his expressed factual finding that Mr. Morales Rivera possessed guns in connection with his offense. He can't meet the safety valve because he can't meet that one prong. And secondarily, he can't meet the final prong of the safety valve because he never provided the government with any information concerning his crimes. Mr. Wagoner, the number of defendants who are subject to the firearms enhancement who also satisfy the safety valve are going to be rare, correct? You have to thread a little bit of a needle, Your Honor. I mean, there are particular circumstances. I think it's most pronounced when the defendant himself is not the one who possessed the firearm. It is a co-conspirator or co-defendant. That is, I think, the most salient difference between the two as well as the burden of proof. On the safety valve, it's the defendant who bears the burden of proof contrary to the offense enhancement where it's the government. So it is a pretty rare circumstances where it's going to apply to one but not the other. But it can happen. Okay. Unless there are any further questions, I'll rest on our briefs. Thank you. Thank you. All right. Rebuttal, Mr. Roy. All right. Thank you, Judge. I will just emphasize really quick. Our view is that the supplement and the reply was not necessary to show plain error. But with those facts there, it only helps with almost every factor of the test. The government highlights the exact nature of Mr. Rodriguez's threat in Puerto Rico, which, yes, it was a criminal act. But so would something that could be prosecuted as disorderly conduct. When we're trying to do the comparator for disorderly conduct, what should we use? There's a variety of federal regulations that might provide for it. What should be used as the counterpoint or the comparison? I mean, our position is that it should be Puerto Rican law just because that's what this court has done previously, and that's how we briefed it with our understanding of circuit law. But, frankly, we're agnostic because we think we succeed under the government's preferred definition too. Unless there's any further questions, I see that I'm out of time. Thank you. Thank you. Mr. Wasserman. Thank you. The U.S. Attorney said the argument was waived. What he didn't say is that it wasn't a good argument. Thanks. Thank you. Mr. Wasserman. Thank you. Mr. Waverman. All right. Thanks to all counsel, the case is taken under advisement.